SCOTT KEITH WILSON, Federal Public Defender (#7347)
WENDY M. LEWIS, Assistant Federal Public Defender (#5993)
FEDERAL PUBLIC DEFENDER
DISTRICT OF UTAH
Attorneys for Defendant
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Facsimile: (801) 524-4060

_____

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM JONES,<br><br>Defendant. | **SENTENCING MEMORANDUM**<br><br>Case No. 2:18-CR-075 DN |

Defendant William Jones, by and through his attorney of record, Wendy M. Lewis, submits this Sentencing Memorandum, and respectfully asks this Court to impose a sentence of 18 months followed by five years of supervised release.

Almost three years ago William had an inappropriate online relationship with a thirteen year old female. Since that time he has been attempting to work and better his life. He has been participating in TCRC and caring for his elderly parents. William was born and raised in Southern Utah, primarily on the Navajo reservation. He has led a life of loneliness, sadness, separation and

1

tragedy. His adult life has primarily focused on taking care of his parents with very little social interactions with others either romantically or otherwise. As is set forth in the presentence report, William had a very difficult upbringing. He was sexually abused between the ages of six and ten, his brother passed away after an accident and while William was in foster care in Salt Lake.  As an adult, William has had two romantic relationships with women, but for the most part he has lived with his parents and helps care for them.

William initially met the victim in this case when he ran into her with her older sister in the community. He knew her sister and was formally introduced to the victim ("A.W.") at that time. Shortly thereafter A.W. reached out to him on Facebook. William accepted the friendship request. The relationship began in an appropriate manner. A.W. was having a difficult time with her family and school life. She expressed suicidal thoughts and William believed he could help her by providing guidance and encouragement. They messaged about her family and issues at school.  However, within weeks the relationship took a turn. It seems that initially William was simply assuring A.W. that she was pretty and worthwhile, but then William began to live out the fantasy of having a partner. The conversations turned towards a fantasy life where William and A.W. were married.  They began using terms of endearments with each other and exchanging non sexual photographs. They began to discuss spending evenings together making dinner and meeting for lunch, none of which actually takes place. Further, even though it would have been very easy for William to request in person meetings with A.W., he never did so. The only time they met in person was for a few minutes so William could give her some money to go out for the evening with her friends. The relationship between William and A.W., although

inappropriate, was never more than a fantasy and now three years later, both parties continue to suffer from these actions.

When looking at the background, personal traits and characteristics of William Jones, a sentence of 18 months is more than adequate. William has no history of sexual misconduct or any other criminal behavior. He acted wrongly in this one relationship due to isolation and loneliness, but he understands the wrongfulness of his actions and has shown for the past three years that he is willing to adjust his behavior accordingly. Currently William has a full time job with TKF Contracting. He commutes approximately two hours each way and works ten hours a day, four days a week. The other three days he stays home with his family. William does this in large part to stay out of the community. He is embarrassed about his actions in this case and does not want to make himself or others uncomfortable. Rather, he wants to work hard and take care of his parents.

The psychosexual examination performed by Dr. Nancy Cohn, supports the fact that this was a fantasy driven offense. Dr. Cohn further articulates that William does not possess any of the characteristics that are associated with a high risk of re-offending.  William has no history of hands on offenses or any other sexual misconduct. He does not meet the criteria for a diagnosis of Antisocial Personality Disorder, nor would he be considered psychopathic which is important in terms of amenability to treatment and future risk. He has been sexually interested in age appropriate partners and has had at least one long term relationship. In classifying William as a low, to moderately low risk for re-offense, Dr. Cohn further points out that he is gainfully employed and has demonstrated the capacity to establish relationships, and maintain safety in

the community. She opines that William is an appropriate candidate for sex offender specific treatment and that he has expressed interest in such treatment. The combination of these factors make William a low risk to the community.

Given William's behavior for the past three years, combined with his participation in TCRC, there is nothing to indicate that he is a future danger to the community. In fact, as a matter of course, non-contact sex offenders have an extremely low recidivism rate. The following table from a 2016 study of 7,416 sex offenders on supervised release demonstrates as follows:

**Table 2. Three year recidivism rates for federal sex offenders while under supervision, by instant conviction offense**

| Instant offense at conviction | Any arrest | Recidivism outcomes | | |
| --- | --- | --- | --- | --- |
| | | Non-sexual violent arrest | Any sex arrest | Probation revocation |
| **All offenders** | | | | |
| Non-sex offender | 31.4% | 7.9% | 0.5% | 22.6% |
| Sex offender | 17.5% | 1.8% | 2.8% | 19.2% |
| **Conviction sex offense** | | | | |
| All child pornography | 13.0% | 0.5% | 2.6% | 11.6% |
|   No record of contact behavior | 12.5% | 0.4% | 2.2% | 9.5% |
|   Official record of contact behavior | 14.7% | 0.7% | 4.1% | 18.2% |
| Sexual assault | 23.1% | 3.6% | 2.2% | 38.5% |
| SORNA | 41.8% | 8.0% | 7.7% | 47.2% |
| Transportation for illegal sexual activity | 17.3% | 1.6% | 2.4% | 14.4% |

Note: Sub-sample used for 3 year arrest rates is restricted to actively supervised TSR cases for which the offender was sentenced to at least 3 years of supervision.

See September 2016 issue of *Federal Probation* (Cohen & Spidell, 2016).

Of all defendants on supervision for a non-contact sex offense, only 2.2% were arrested for a future sex offense. Further, only 9.5% violated their supervised release which is lower than any

4

other category of offenders. There is nothing unusual about William that would cause any concern that he would statistically be more likely to commit future offenses than other offenders. If anything, the opposite is true.

An 18 month sentence does take into account the seriousness of the offense in this matter. First, this is exactly the sentence that the victim and her family feels is appropriate. Secondly, this case actually deals with only two sexually explicit pictures. Unlike virtually every other sex offender before this Court, William did not possess any pornography of any kind. He did not collect child pornography and he does not have a sexual interest in children. At no time did William share the photos online or in person with any other individual. Lastly, William has already shown that he will comply with all court orders and that he will not engage in any further similar conduct. It is also important to note that there are serious consequences associated simply with being a convicted felon. These collateral consequences, or invisible punishments, are extreme and last a lifetime.

> [T]here is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offenders actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement. . . . In essence, the courts discretion to depart is a manifestation of the necessity for a just sentencing scheme to include provisions for that reasoned intuitive judgment, rather than a hard, deterministic formula, to govern the rare case. . . . The concept of what is "just punishment" thus contemplates a prospective, empirical assessment, necessarily imprecise, of the accumulation of reasonably foreseeable, ordinary hardships and suffering that any given offender is likely to experience in the typical case during the course of a particular range of imprisonment.

*United States v. Mateo,* 299 F. Supp.2d 210 (S.D.N.Y. 2004)(citations omitted).

These lifelong punishments are particularly severe in sex offenses. William will now be a registered sex offender. Being a registered sex offender carries a social stigmatization that will follow William for many years to come, if not for the rest of his life.

An 18 month sentence will provide adequate deterrence for William. He has never spent any time in custody and the empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et. al, Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).

In terms of unwarranted sentencing disparities, the government states that the court should not compare particular defendants, but rather look to national uniformity. The government then goes on to point out one particular case where a 78 month sentence was upheld. Sentences in these types of case, like all cases, encompass a wide range depending on the case. In *United States v. Zick*, 2:16-cr-570CW, a case with very similar facts, Judge Waddoups sentenced Mr. Zick to 12 months and one day with 5 years of supervised release to follow.  Mr. Zick, like William, had no criminal history. He had an online relationship with a 13 year old girl and received two sexually explicit pictures from the minor. The only significant difference between this case and that was that Mr. Zick suffered from Bi-Polar disorder and was not properly medicated at the time of the offense, and Mr. Zick also violated his pretrial release by possessing an unauthorized device and had been in custody 8 months at the time of sentencing. Like Mr. Zick, William received two photos and has no criminal history. Although William does not suffer from any mental illness, his personal history does offer the Court some

idea as to how he may have been more likely to engage in this type of conduct than others. Finally, William has followed every condition of pretrial release and has been in the community for three years since the commission of the offense and yet he is still facing a sentence that is six months longer than was imposed in Zick.

    William Jones stands before this Court today as a success story. He has already accomplished what we set out to accomplish in sentencing defendants. He has changed his behavior, acquired full time employment, he does not drink or use illegal substances and he has been successful on release for three years. The only thing left is treatment. William can participate in treatment during the 18 months he is in custody, but adequate treatment can be provided in the community. Upon release William can return to TCRC if the Court feels that this will aide in his continued success. Although William would like to put this episode behind him, the truth is that this episode will forever be a part of his life. He will pay the consequences for these actions for many years to come, if not for the rest of his life. He understands and accepts this because he know that A.W. will also likely deal with the consequences of his actions for years to come. Under the circumstances of this case however, a sentence of 18 months followed by five years of supervised release, is an appropriate sentence.

    DATED this 1st day of November, 2019.

    /s/ *Wendy M. Lewis*
    WENDY M. LEWIS
    Assistant Federal Defender

8